**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LORI HILLARD, | ) |
|                       Plaintiff, | ) |
| | ) |
|     vs. | ) |
| | ) |
| BRIGHTFARMS, INC. | ) |
|                       Defendant. | |

**PLAINTIFF'S COMPLAINT AT LAW FOR STRICT LIABILITY,
NEGLIGENCE, AND BREACH OF WARRANTY**

NOW comes Plaintiff, LORI HILLIARD, individually, by and through her attorneys of record, MARLER CLARK, L.L.P., P.S. and GARY NEWLAND of NEWLAND & NEWLAND, and alleges upon information and belief as follows:

**PARTIES**

1. Plaintiff LORI HILLIARD resides and is domiciled in Lombard, Illinois. LORI HILLIARD is, therefore, a citizen of the state of Illinois.

2. Defendant, BRIGHTFARMS, INC. is a Delaware corporation with its principal place of business at 211 E. 48th St, New York, NY 10017. At all times relevant to this Complaint, BrightFarms grew, harvested, and distributed leafy green food products, including the contaminated food that Plaintiff consumed. Therefore, BRIGHTFARMS, INC. is a citizen of the states of Delaware and New York.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because BRIGHTFARMS, INC. has certain minimum contacts with the state of Illinois such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to LORI HILLIARD'S claims and causes action occurred in this judicial district, and because BRIGHTFARMS, INC. was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

**The *Salmonella* bacteria**

5. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with human or animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, but all foods, including vegetables, may become contaminated. An infected food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

6. Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 6-72 hours. As few as 15-20 cells of *Salmonella* bacteria can cause salmonellosis or a more serious typhoid-like fever. Variables, such as the health and age of the host and virulence differences among the serotypes, affect the nature and extent of the illness. Infants, elderly, hospitalized, and immune suppressed persons are the populations that are most susceptible to disease and suffer the most severe symptoms.

7. The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, abdominal cramping, and diarrhea lasting several days. The diarrhea often turns bloody. There is no real cure for *Salmonella* infection, except treatment of the symptoms. Persons with severe diarrhea may require rehydration, often with intravenous fluids.

8. Persons with diarrhea usually recover completely, although it may be several

months before bowel habits return entirely to normal. A small number of persons who are infected with *Salmonella* will go on to develop pains in their joints, irritation of the eyes, and painful urination. This development is called Reiter's syndrome or reactive arthritis, and it can last for months or years, sometimes leading to chronic arthritis that is difficult to treat. Antibiotic treatment does not make a difference in whether the person later develops arthritis.

**The BrightFarms *Salmonella* Typhimurium Outbreak:**

9. As of July 16, 2021, nine people infected with the outbreak strain of *Salmonella* Typhimurium have been reported from two states. Illnesses started on dates ranging from June 10, 2021, to June 15, 2021.

10. Sick people range in age from 19 to 61 years, with a median age of 44, and 56% are female. One person was hospitalized, and no deaths have been reported.

11. The true number of sick people in an outbreak is likely much higher than the number reported, and the outbreak may not be limited to the states with known illnesses. This is because many people recover without medical care and are not tested for *Salmonella*. In addition, recent illnesses may not yet be reported as it usually takes 3 to 4 weeks to determine if a sick person is part of an outbreak.

12. Officials from Illinois and Wisconsin interviewed people about the foods they ate in the week before they got sick and collected shopper card records to determine what products they bought.

13. All nine people reported eating leafy greens, and seven (78%) people reported eating prepackaged salads. The percentage of people in this outbreak who ate prepackaged salads

was significantly higher than the 38% of respondents from the FoodNet Population Survey who reported eating prepackaged salads in the prior week. This comparison suggests that people in this outbreak got sick from eating prepackaged salads.

14. Interview data and shopper card records show that six people ate or bought a variety of BrightFarms packaged salad greens before they got sick, including Sunny Crunch, 50/50 Spring & Spinach, Harvest Crunch, and Butter Crisp. FDA conducted a traceback investigation and identified BrightFarms greenhouse farm in Rochelle, IL, as the likely source of packaged salad greens bought by sick people.

15. Public health investigators are using the PulseNet system to identify illnesses that may be part of this outbreak. CDC PulseNet manages a national database of DNA fingerprints of bacteria that cause foodborne illnesses. DNA fingerprinting is performed on bacteria using a method called whole genome sequencing (WGS). WGS showed that bacteria from sick people's samples are closely related genetically. This suggests that people in this outbreak got sick from the same food.

16. WGS analysis of six people's samples did not predict resistance to any antibiotics. Standard antibiotic susceptibility testing by CDC's National Antimicrobial Resistance Monitoring System (NARMS) laboratory is currently underway.

17. On July 15, 2021, BrightFarms recalled their packaged salad greens produced in the Rochelle, IL, greenhouse farm.

18. CDC is advising people not to eat, sell, or serve any recalled BrightFarms packaged salad greens.

**Plaintiff Lori Hilliard's Injuries**

19. Plaintiff purchased BrightFarms salads at the Mariano's located at 345 W. Roosevelt Ave., Lombard, Illinois, on June 3 and June 5, 2021. She consumed these salads during the week following her purchases.

20. Plaintiff experienced symptom onset of her *Salmonella* infection on or about June 11, 2021, including body aches, headache, chills, fever, abdominal cramping, and diarrhea.

21. Plaintiff's symptoms continued to worsen, and she sought medical care at Elmhurst Hospital on June 13, 2021. She was sent home with anti-diarrheal medication.

22. Plaintiff's symptoms did not improve, and on June 14, 2021, her doctor ordered a stool sample test for further investigation. Meanwhile, Plaintiff's symptoms continued, including at least one episode of bloody diarrhea and severe abdominal pain.

23. Plaintiff's stool eventually tested positive for *Salmonella*, and she was contacted by the DuPage County Health Department for a food history interview. The health department official she spoke to informed her that there was an ongoing outbreak linked to BrightFarms lettuce.

24. Plaintiff's severe symptoms continued for about two weeks from the date of her symptom onset. To date, she is still experiencing abdominal cramping and loose stools, for which she is seeking continued medical treatment. Plaintiff continues to recover from her *Salmonella* infection.

## CAUSES OF ACTION

### COUNT I

### STRICT LIABILITY

25. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

26. Defendant manufactured, distributed, and sold the adulterated food product that injured Plaintiff and caused her to become infected with *Salmonella*.

27. Food and drink that is contaminated with *Salmonella* is unsafe when put to the use

reasonably foreseeable considering the nature of the product. Namely, *Salmonella*-contaminated food and drink is unfit for human consumption.

28. The food that Plaintiff purchased from Defendant was contaminated with *Salmonella*. Plaintiff's consumption of the contaminated food caused her to become infected with *Salmonella* and to suffer injuries as a direct and proximate result.

29. The food that Plaintiff purchased and consumed was contaminated with *Salmonella* when it left Defendant's control.

30. Defendant is strictly liable to Plaintiff for the harm proximately caused by its manufacture and sale of an unsafe and defective food product.

## **COUNT II**
### **NEGLIGENCE**

31. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

32. Defendant designed, manufactured, distributed, and sold food products that were adulterated with *Salmonella* bacteria, a harmful pathogen. These products, as a result of adulteration, were unfit for human consumption, and were not reasonably safe as designed, constructed, manufactured, and sold.

33. Defendant owed a duty to all persons who were the eventual consumers of its product, as well as all persons foreseeably at risk of secondary transmission of disease, to manufacture and sell food that was safe to eat, was not adulterated with harmful pathogens, like *Salmonella*, and that was not in violation of applicable food and safety regulations.

34. Defendants owed a duty to all persons who were the eventual consumers of its products, as well as all persons foreseeably at risk of secondary transmission of disease, to maintain

its premises in a sanitary and safe condition so that no one eating food produced at Defendant's premises would be exposed to, or infected by, a harmful pathogen, like *Salmonella*. Defendant also owed a duty to all persons who were the eventual consumers of its products to use wholesome ingredients.

35. Defendant breached the duties it owed to persons who were the eventual consumers of its products, as well as all persons foreseeably at risk of secondary transmission of disease, by committing the following acts and omissions of negligence:

36. Failing to adequately maintain or monitor the sanitary conditions of its food, drink, water, premises, and employees;

37. Failing to properly operate the locations where it manufactured its food in a safe, clean, and sanitary manner;

38. Failing to prevent the transmission of *Salmonella* from its food, drink, water, premises, or employees, to the ultimate consumers of its products, and those foreseeably at risk of secondary transmission of disease;

39. Failing to properly train its employees and agents on how to prevent the transmission of *Salmonella* on its premises, or in its food, drink and water;

40. Failing to properly supervise its employees and agents to prevent the transmission of *Salmonella* on its premises, or in its food, drink and water;

41. Manufacturing and selling adulterated food in violation of 410 ILCS 620/3.2;

42. Storing, offering, and delivering food in violation of 410 ILCS 620/3.1 and 410 ILCS 620/3.4;

43. Failing to maintain its premises in a clean, sanitary, and healthful manner in violation of 410 ILCS 650/1 and 410 ILCS 650/2; and

44. Failing to properly and carefully select and monitor the entities from which it purchased and received raw materials used in the production of the products.

45. Defendant had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation and sale of its food products, to ensure compliance with Defendant's operating standards and all applicable health regulations. Defendant failed to properly supervise, train, and monitor these employees engaged in the growth, manufacture, and distribution of the food product ultimately consumed by Plaintiff, and thus breached that duty.

### COUNT III

### BREACH OF WARRANTY

46. Plaintiff incorporates the preceding paragraphs of this Complaint, by this reference, as if each and every of these paragraphs were set forth here in its entirety.

47. By offering food for sale to the general public, Defendant expressly warranted that such food was safe to eat, that it was not adulterated with a harmful pathogen, and that the food had been safely prepared under sanitary conditions.

48. By offering food for sale to the general public, Defendant also impliedly warranted that such food was safe to eat, that it was not adulterated with a harmful pathogen, and that the food had been safely prepared under sanitary conditions.

49. Defendant breached its express and implied warranties with regard to the food it manufactured and that was ultimately consumed by Plaintiff.

50. Defendant is strictly liable to Plaintiff for the harm proximately caused by its manufacture and sale of an unsafe and defective food product.

### PRAYER FOR RELIEF

WHEREFORE, LORI HILLIARD prays for judgment against BRIGHTFARMS, INC. as follows:

a. Judgment for LORI HILLIARD against BRIGHTFARMS, INC. for just compensation in a fair and reasonable amount for the damages above set forth; and

b. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

Dated: July 26, 2021     By:    */s/Gary A. Newland*
                                                                        Gary A. Newland
                                                                        NEWLAND & NEWLAND, LLP
                                                                        Attorneys for Plaintiff
                                                                        LORI HILLARD

Dated: July 26, 2021     By:    */s/William D. Marler*
                                                                        Willaim D. Marler
                                                                        MARLER CLARK, LLP
                                                                        Attorneys for Plaintiff
                                                                        LORI HILLARD

Gary A. Newland
Erin A. Adamski
NEWLAND & NEWLAND, LLP
121 S. Wilke Road, Ste. 101
Arlington Heights, IL 60005
Tel: (847) 797-8000
Fax: (847) 797-9090
gary@newlandlaw.com
erin@newlandlaw.com
paralegal.newland3@gmail.com
ARDC Nos. 6217146 / 6317891

and

William D. Marler (*pro hac vice* anticipated)
MARLER CLARK, LLP, PS
1012 1st Ave, Fifth Floor
Seattle, WA 98104
Tel: (206) 346-1888
Fax: (206) 346-1998
bmarler@marlerclark.com
ARDC No. 6318749


Attorneys for Plaintiff,
LORI HILLARD